UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |  |
|---|---|---|
| OPAL'S LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action No.: |
| v. | : | |
| | : | Judge: |
| TARGET CORPORATION and TARGET | : | |
| BRANDS, INC., | : | |
| | : | Jury Trial Demanded |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |

## VERIFIED COMPLAINT FOR TRADEMARK INFRINGEMENT, UNFAIR COMPETITION, AND VIOLATION OF OHIO STATUTORY AND COMMON LAW

OPAL'S LLC ("Plaintiff") by and through its attorneys, brings this action for trademark infringement and unfair competition under federal law, the Lanham Act, and for violations of Ohio statutory and common law, alleging as follows against TARGET CORPORATION and TARGET BRANDS, INC. ("Target" or "Defendant"):

## NATURE OF THE ACTION

1.     Since 2012, Plaintiff has provided interior design and home décor related products and services under the unique and highly distinctive trade name and trademark OPAL STACKHOUSE. By this action for trademark infringement and unfair competition, Plaintiff seeks an injunction, damages and other relief as a result of Defendant's recent national launch of a directly competitive business under the confusingly similar brand, OPALHOUSE. Having all the resources available to a multi-billion-dollar nationwide retailer, Target either knew or should

have known that launching OPALHOUSE would cause confusion among the relevant trade and public and threaten to destroy Plaintiff's valuable, carefully cultivated and authentic brand and reputation.

## THE PARTIES

2. Plaintiff Opal's LLC is an Ohio limited liability company with its physical storefront and headquarters location at 863 Henry Street, in the heart of the vibrant "Victorian Village" section of Columbus, Ohio 43215.

3. On information and belief, Target Corporation is a Minnesota corporation with its principal place of business at 1000 Nicollet Mall, Minneapolis, Minnesota 55403.

4. On information and belief, Target Brands, Inc., is a Minnesota corporation with its principal place of business at 1000 Nicollet Mall, Minneapolis, Minnesota 55403.

5. On information and belief, Target is authorized to do business in Ohio and within this District, as well as across the country.

## JURISDICTION AND VENUE

6. Count I herein arises under the laws of the United States prohibiting trademark infringement and unfair competition, specifically the Lanham Act, 15 U.S.C. § 1125(a). Count II is for deceptive trade practices in violation of Ohio Revised Code § 4165.01 *et seq*. Count III arises under Ohio common law prohibiting trademark infringement and unfair competition.

7. This Court has original jurisdiction over the subject matter of this action based on 15 U.S.C. § 1121, 28 U.S.C. § 1331, § 1338(a)-(b), as federal questions are presented. This Court has jurisdiction over the state law claims asserted in Counts II and III herein under 28 U.S.C. § 1367 and § 1338(b).

8. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and (c), and this Court has personal jurisdiction over Defendant because Target conducts business within

this District, the acts giving rise to the asserted claims are being committed within this District, and Plaintiff is suffering harm in this District.

## FACTS

### OPAL STACKHOUSE

9.      The sole member of the Plaintiff limited liability company is Ashley Alane Puckett, a Columbus, Ohio native who has been part of the city's design community for many years.  Plaintiff owns and since 2012 has used the unique, arbitrary and highly distinctive trade name and trademark, OPAL STACKHOUSE.  Ms. Puckett adopted the trademark to honor her maternal grandmother, a woman she never met, but who serves as an ongoing inspiration in both her personal life and business career.  As related on Plaintiff's website, opalstackhouse.com, Ms. Puckett believes "OPAL STACKHOUSE" has a "handsome shape and a great sound to it," so, in homage to her grandmother, she adopted it for her business and "made it into something new."

10.     Ms. Puckett is the creative force behind OPAL STACKHOUSE.  Under her leadership, and using what she describes as an "old-school aesthetic," OPAL STACKHOUSE has designed, supplied and installed unique interiors for Columbus area homes and some of its best-known retail establishments, including The Crest, Ethyl & Tank, Bodega, Ologie, and Elm & Iron.

11.     As an integral part of OPAL STACKHOUSE design services, Ms. Puckett and her team source, curate and supply "found objects"—the fixtures, furniture, furnishings, art, and antiques that give each project a wholly authentic look and feel.  Over time, OPAL STACKHOUSE has earned a reputation for having a unique vision, imbued with a deep respect for historical objects, and the ability to make them "new again."  Thus, the OPAL STACKHOUSE tagline: "MAKE IT REAL."

12. In addition to design services, OPAL STACKHOUSE has established a brick and mortar and online retail business—sourcing, collecting, curating and selling the same "found objects" supplied to design clients. To further its retail operations, Plaintiff registered the opalstackhouse.com domain name on August 18, 2011, and launched its website shortly thereafter. Since that time, Plaintiff has used OPAL STACKHOUSE continually as an online retailer and in connection with its various social media accounts on INSTAGRAM, TUMBLR, ETSY, FLICKR and FACEBOOK.

13. Plaintiff's current brick and mortar retail location opened in Victorian Village in June 2016.

14. Plaintiff's OPAL STACKHOUSE retail operation reflects the same "MAKE IT REAL" design aesthetic and approach, offering products in categories including: Objects, Rugs, Pillows & Throws, Furniture, Lighting, Vessels, Signs & Prints, and Dishware. At any given time, Plaintiff's rotating retail inventory features dozens of eclectic, curated objects, with recent examples including a vintage wine bottle basket ($18); porcelain sugar bowl ($12); bentwood chair ($50); Brazilian art print ($70); chest of drawers ($295); and stoneware vase ($300).

15. Plaintiff sells products in a broad range of prices, but always with an emphasis on quality and authenticity.

16. Ms. Puckett uses social media, particularly Instagram, to broaden Plaintiff's online presence and market the found objects sold through the OPAL STACKHOUSE website and storefront. Currently, Plaintiff promotes its products and services to thousands of Instagram "followers," including design professionals and individual consumers.

17.     By using these techniques, Plaintiff has established a nationwide presence for the OPAL STACKHOUSE brand, and has sold and shipped products to customers in at least thirty states, including Minnesota.

18.     Ms. Puckett fully intends to continue and expand the business she has nurtured under the OPAL STACKHOUSE brand.  Her prospects for doing so changed considerably, however, when she learned that Target, one of the country's largest "big box" retailers, was launching a directly competitive business under the confusingly similar name and mark, "OPALHOUSE," and the corresponding tagline: "INSPIRED OBJECTS."

### Target and Its OPALHOUSE Launch

19.     Target is one of the largest mass-market retailers in the United States, with nearly 2,000 stores and 39 distribution centers, and with an online retail business at target.com.  Target sells a wide variety of products, including home furnishings and décor.

20.     Target sells products under numerous "private label" brands, such as its "Threshold" and "Project 62" furniture and furnishings product lines.  Target also has a well-publicized history of collaborating with third-party designers to create private-label brands and similar partnerships.  Recent examples include Target teaming up with "Harry's," a men's grooming brand, and the launch of "Hearth & Hand," a home and lifestyle brand developed in partnership with television personalities Chip and Joanna Gaines.  According to Mark Tritton, Target's Executive Vice President and Chief Merchandising Officer, "Great partnerships are the essence of what we do, whether we're working with national brands or teaming up with designers."

21.     On February 20, 2018, Target announced another new home brand – "OPALHOUSE" – a collection of "more than 1,300 pieces for the home, spanning bedding, bath,

décor, tabletop and furniture."  According to Target's press release, its design team "traveled far

and wide" to "gather inspiration to create a collection of authentically-inspired, eclectic pieces."

Mr. Tritton says OPALHOUSE is "centered around the eclectic aesthetic."

22.     OPALHOUSE products became available in all Target stores and online on April

8, 2018.  Prices range as high as $500, but most items sell for under $30, reflecting mass-

merchant "discount" pricing.

23.     On information and belief, all or substantially all of the products in Target's

OPALHOUSE line are manufactured in India, China and other foreign countries.

24.     Like Plaintiff, Target uses social media, particularly Instagram, to broaden its

online presence and market the "inspired objects" in the OPALHOUSE line.  According to

Target's in-house creative agency, Target has millions of Instagram followers, more than any

other mass retailer.

25.     As illustrated in Paragraphs 25-31 below, Target offers and sells many of the

same products and types of products in its OPALHOUSE line (right column) as Plaintiff sells

under its OPAL STACKHOUSE trademark (left column).



26.

27.  

Wall Tapestries - Opalhouse™

28.   

29.  

30.  

31.



32.

33.    Target offers and sells OPALHOUSE products to the same customers to whom Plaintiff offers and sells products and services under its OPAL STACKHOUSE trademark.

### Likely and Actual Confusion

34.    Target has no connection or affiliation with Plaintiff and is not authorized to use Plaintiff's OPAL STACKHOUSE trademark, or any confusingly similar mark.

35.    By using OPALHOUSE for a directly competitive product line, Target is creating the false impression that it has formed an authorized private label version of Plaintiff's distinctive brand, OPAL STACKHOUSE.

36.    By using OPALHOUSE for a directly competitive product line, Target is creating the false impression that, like Plaintiff, it is offering authentic found objects, when in reality the

OPALHOUSE line consists of mass-produced, foreign-made products that, in Target's own words, are only "authentically-inspired."

37.     By using OPALHOUSE for a directly competitive product line, Target has co-opted Plaintiff's name, trademark and reputation, and is unlawfully repositioning OPAL STACKHOUSE as a "mass" brand, devoid of its original, hard-earned character and cachet.

38.     Target's conduct is likely to cause and, on information and belief, has caused consumers to believe mistakenly that OPALHOUSE products are either affiliated with, endorsed or authorized by, or somehow connected to Plaintiff or its OPAL STACKOUSE trademark.

39.     On information and belief, Target's actions have caused both traditional, forward confusion and so-called "reverse confusion," an injury inflicted when the junior user, here Target, so swamps the marketplace with an infringing brand that the public believes the senior user, here Plaintiff, is the infringer, thereby destroying the senior brand.

40.     Since Target announced OPALHOUSE, members of the relevant trade and public have expressed confusion, anger and disgust overs Target's actions.  On information and belief, for every instance of reported "actual" confusion, there are numerous instances of unreported confusion between OPALHOUSE and OPAL STACKHOUSE.  Such confusion is likely to continue, to the detriment of the public and Plaintiff.

41.     On information and belief, Target had knowledge of Plaintiff and its OPAL STACKHOUSE trademark prior to its adoption and use of OPALHOUSE.

42.     On information and belief, Target had knowledge of Plaintiff and its OPAL STACKHOUSE trademark prior to filing the following federal trademark applications seeking registration of "OPALHOUSE": Serial Nos. 87549287; 87549305; 87549310; 87379216;

87379408; 87379417; 87379421; 87379462; 87431929; 87431933; 87431937; 87431938; 87431945; 87549315; and 87549322.

43.     On information and belief, Target is aware of instances of confusion between OPALHOUSE and OPAL STACKHOUSE.

44.     Target's conduct complained of herein is willful, intentional, and represents a conscious disregard for Plaintiff's rights, making this an exceptional case.

## COUNT I

## UNFAIR COMPETITION UNDER THE LANHAM ACT, 15 U.S.C. § 1125(a)

45.     Plaintiff repeats and realleges the allegations of paragraphs 1 through 44.

46.     Plaintiff's OPAL STACKHOUSE trademark is inherently distinctive and has acquired distinctiveness and secondary meaning as a source indicator.

47.     Target's acts complained of herein constitute unfair competition and false designations of origin, as they are likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Target's products with Plaintiff, or as to the origin, sponsorship or approval of Target's products, services or commercial activities in violation of Plaintiff's rights, within the meaning of 15 U.S.C. § 1125(a).

48.     Target's acts complained of herein are willful and done with the intention of causing confusion, mistake, or deception, or otherwise competing unfairly with Plaintiff.

49.     Target's acts complained of herein jeopardize the goodwill symbolized by the Plaintiff's trademark, causing serious and irreparable injury to Plaintiff, and a likelihood of such future harm, for which it has no adequate remedy at law.

## COUNT II

### DECEPTIVE TRADE PRACTICES IN VIOLATION OF OHIO REV. CODE § 4165.01 *ET SEQ.*

50.     Plaintiff repeats and realleges the allegations of paragraphs 1 through 49.

51.     Target's acts complained of herein constitute unfair competition in violation of Ohio Rev. Code § 4165.01 *et seq.*

52.     Target's acts complained of herein were committed willfully, knowingly, maliciously, and in conscious disregard of Plaintiff's rights.

53.     Target's acts complained of herein have caused and, if not restrained by this Court, will continue to cause Plaintiff serious and irreparable injury for which Plaintiff has no adequate remedy at law.

## COUNT III

### TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION IN VIOLATION OF OHIO COMMON LAW

54.     Plaintiff repeats and realleges the allegations of paragraphs 1 through 53.

55.     Target's acts complained of herein constitute violations of the common law of Ohio, which prohibits trademark infringement and unfair competition.

56.     Target has willfully engaged in acts of trademark infringement and unfair competition as alleged herein.

57.     Target's acts of trademark infringement and unfair competition have caused, and if not restrained by this Court, will continue to cause Plaintiff serious and irreparable injury for which Plaintiff has no adequate remedy at law.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff prays for a judgment against Defendants as follows:

A.       For an injunction restraining Defendants, their members, officers, agents, licensees, assignees, successors, servants, employees, attorneys and all other persons in active concert or participation with them from:

> (1)       manufacturing, designing, importing, imprinting, selling, or distributing products bearing the designation OPALHOUSE, or any other designation confusingly similar to OPAL STACKHOUSE;

> (2)       advertising, displaying, or promoting any product or service by using the designation OPALHOUSE, or any other designation confusingly similar to OPAL STACKHOUSE; or

> (3)       holding out, in any manner whatsoever, that Defendant, or its products or services, are in any way sponsored by, or associated or affiliated with Plaintiff, or Plaintiff's products or services.

B.       That Defendants be required to promptly file with the Court and serve upon Plaintiff a report, in writing and under oath, setting forth in detail the manner in which Defendants have complied with any injunction issued by the Court, pursuant to 15 U.S.C. § 1116(a).

C.       That Defendants be directed to deliver up to Plaintiff for destruction the products and all other materials of any nature whatsoever bearing the designation OPALHOUSE, or any other designation confusingly similar to OPAL STACKHOUSE, including products, designs, packaging materials, advertising or promotional materials, pursuant to 15 U.S.C. § 1118.

D.     That Defendants be required to make a detailed accounting to Plaintiff with respect to all transactions relating to its unlawful acts alleged herein, including:  (1) their gross revenues resulting from such actions; and (2) total profits generated, including a detailed explanation of any alleged deductions to be made in the calculation of profits.

E.     That Defendants be directed to pay over to Plaintiff all gains, profits and advantages realized by Defendants from their unlawful acts alleged herein, pursuant to 15 U.S.C. § 1117.

F.     That Defendants be directed to pay to Plaintiff the costs of this action, reasonable attorney fees, and all damages suffered by Plaintiff in an amount to be determined at trial, plus interest as allowed by law, and that such damages be trebled pursuant to 15 U.S.C. § 1117, and/or that punitive damages be awarded pursuant to state law.

G.     That the Court order the cancellation of any U.S. trademark registration(s) issued to either Defendant which include the designation OPALHOUSE, or any other designation confusingly similar to OPAL STACKHOUSE, pursuant to 15 U.S.C. § 1119.

H.     That Plaintiff have such other and further relief that the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demand a trial by jury on all claims so triable.

Respectfully submitted by:

/s/ Shawn J. Organ
_____

Dated: Columbus, Ohio
     July 20, 2018

Shawn J. Organ  (0042052) Trial Attorney
Joshua M. Feasel (0090291)
**ORGAN COLE LLP**
1330 Dublin Road
Columbus, Ohio 43215

614.481.0900
sjorgan@organcole.com
jmfeasel@organcole.com

Kevin Parks (pro hac vice forthcoming)
Leydig, Voit & Mayer, Ltd.
180 North Stetson
Two Prudential Plaza, Suite 4900
Chicago, Illinois 60601
312.616.5669
kparks@leydig.com

Joe Quigley (pro hac vice forthcoming)
Rivet LLC
325 N. LaSalle Drive, Suite 625
Chicago, Illinois 60654
614.398.7000
jquigley@rivettm.com

*Attorneys for Plaintiff*
OPAL'S LLC

## VERIFICATION

Pursuant to 28 U.S.C § 1746, I declare under penalty of perjury that the allegations in the foregoing Verified Complaint for Trademark Infringement, Unfair Competition and Violation of State Statutory and Common Law are true and correct to the best of my knowledge.

Executed on July 11, 2018

Ashley Alane Puckett
Sole Member
OPAL'S LLC